James M. BOHANAN *v.* STATE of Arkansas

CA CR 00-77 38 S.W.3d 902

Court of Appeals of Arkansas
Divisions I and IV
Opinion delivered February 14, 2001
[Petition for rehearing denied March 21, 2001.]

*Claire Borengasser,* Deputy Public Defender, for appellant.

*Mark Pryor,* Att'y Gen., by: · *Valerie L. Kelly,* Ass't Att'y Gen., for appellee.

J OHN B. ROBBINS, Judge. Appellant James M. Bohanan was convicted by a jury of driving while intoxicated. He was fined $500.00 and ordered to serve one day in jail, with credit for time served. Mr. Bohanan now appeals, arguing that his conviction is not supported by sufficient evidence. He also raises three evidentiary issues. We affirm.

█ When an appellant challenges the sufficiency of the evidence, we review the sufficiency argument prior to a review of any alleged trial errors. *Jenkins v. State,* 60 Ark. App. 1, 959 S.W.2d 57 (1997). The test for determining the sufficiency of the evidence is whether the verdict is supported by substantial evidence, direct or circumstantial. *Id.* Substantial evidence is evidence forceful enough to compel a conclusion with reasonable certainty, without resort to conjecture. *Breedlove v. State,* 62 Ark. App. 219, 970 S.W.2d 313 (1998). We review the evidence in the light most favorable to the State, considering only the evidence that tends to support the verdict. *Jenkins v. State, supra.*

Deputy Steven Cox of the Sebastian County Sheriff's Department testified for the State. Deputy Cox stated that he was patrolling on December 15, 1998, at about 11:00 p.m. when he found a blue sedan parked in a driveway off of Highway 252. The driveway was the entrance to the premises of a logging company, and the vehicle was parked in front of a locked gate. Deputy Cox parked directly behind the sedan to check on the welfare of anyone who might be in it.

Upon approaching the vehicle with his flashlight, Deputy Cox observed Mr. Bohanan lying in the front seat, sleeping, with a jacket over him. He testified, "He was laying down in the front seat as if he had sat down behind the driver's side of the vehicle and just laid over." Deputy Cox also noticed a plastic bag containing several empty beer cans on the floorboard. After knocking on the window for several minutes, Deputy Cox was finally able to awaken Mr. Bohanan. Mr. Bohanan asked for permission to relieve himself, and he was permitted to do so.

Deputy Cox questioned Mr. Bohanan about who he was, what he was doing there, and whether he had been drinking. Mr. Bohanan said that he had been in Fort Smith drinking beer and shooting pool. Deputy Cox noticed that Mr. Bohanan was staggering, had slurred speech, and smelled of alcohol. He attempted to administer sobriety tests, but appellant refused, stating "there is no use taking it, I would make a fool of myself." At that point, Mr. Bohanan was arrested and taken to the police station, where he refused a Breathalyzer test. According to Deputy Cox, the keys were in the ignition at the time of the arrest.

Karen Whitted testified for the defense. She stated that she was a close friend of Mr. Bohanan's and that she was with him in Fort Smith while he was shooting pool. She explained that she was driving his car back to Waldron and that he was a passenger. She stated that, on the way home, they got into an argument so she turned into a driveway. She testified that she took his car keys and left him there in the car, and rode home with her sister, who was following in a separate car.

On rebuttal, Officer Arlis Spearman was permitted to testify about why he called Deputy Cox to the area where appellant's car was located. Officer Spearman stated, "I was sitting at the car wash at Highway 71 and 252 when some people stopped and advised me that there was a blue four door passenger car driving erratically."

Lieutenant Gary O'Brien also testified on rebuttal. He explained how items are inventoried after an arrest. He then reviewed Mr. Bohanan's inventory list, which included a set of car keys.

■ Mr. Bohanan first argues that the verdict was not supported by substantial evidence. Arkansas Code Annotated section 5-65-103 (Repl. 1997) provides that it is unlawful for any person who is intoxicated to operate or be in actual control of a motor vehicle. A vehicle's operability is relevant to the issue of actual physical control; it is possible for a vehicle to be so incapable of operation that subsequent control of it would fall outside the purview of the statute. *Hodge v. State*, 27 Ark. App. 93, 766 S.W.2d 619 (1989). Mr. Bohanan does not argue that there was insufficient evidence of his intoxication. Rather, he argues that there was insufficient proof that he was in control of the vehicle. He notes that he was not seen driving the vehicle and submits that there was

no evidence showing that the car was even operable, as the police apparently never tried to start the car. Appellant asserts that, because the State failed to prove that he had driven the car, or that it was capable of operation, his DWI conviction should be reversed.

██ ██ Mr. Bohanan's sufficiency argument is without merit. It is well settled that the State may prove physical control of a vehicle through circumstantial evidence. *Wetherington v. State*, 319 Ark. 37, 889 S.W.2d 34 (1994). The supreme court has held that evidence that an intoxicated person was asleep behind the wheel of a car with the key in the ignition was sufficient to show the person accused was in control of a vehicle. *Roberts v. State*, 287 Ark. 451, 701 S.W.2d 112 (1985). Similarly, we have held that evidence that an intoxicated person was asleep or "passed out" in the front seat of a vehicle with the lights on and motor running was sufficient to show the person was in control of a vehicle. *Blakemore v. State*, 25 Ark. App. 335, 758 S.W.2d 425 (1988). Here, there was evidence that Mr. Bohanan was asleep in the front seat, as if he had been in the driver's seat and then lay down, and the keys were in the ignition. In addition, he admitted that he had been drinking and shooting pool miles away, and given that he was the only person in the car, the jury could have reasonably concluded that he must have driven there. There was sufficient evidence to establish that he was in control of the car.

██ Similarly, there was circumstantial evidence that the vehicle was operable. In *Azbill v. State*, 285 Ark. 98, 685 S.W.2d 162 (1985), the supreme court held there was circumstantial evidence that appellant had been operating his truck, which was stuck in the median, because appellant told the police he was coming from Jonesboro. In the instant case, Mr. Bohanan was the only person near the car, the keys were in the ignition, and he said he had been in Fort Smith drinking beer earlier. The circumstantial evidence excludes every other reasonable hypothesis other than the jury's conclusion that the car was capable of operation, and that Mr. Bohanan was in control of it while intoxicated.

██ Mr. Bohanan next argues that the trial court erred in admitting his statements to the police because he was not Mirandized before being questioned and making incriminating statements. In *Shelton v. State*, 287 Ark. 322, 699 S.W.2d 728 (1985), the supreme court announced:

> It is settled that the safeguards prescribed by Miranda become applicable as soon as a suspect's freedom of action is curtailed to a degree associated with formal arrest. A policeman's unarticulated plan has no bearing on the question whether a suspect was "in custody" at a particular time; the only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation.

*Id.* at 328-29, 699 S.W.2d at 731 (quoting *Berkemer v. McCarty*, 486 U.S. 420 (1984)). In this case, the police officer pulled up behind appellant's vehicle, which blocked him in because he was in front of a locked fence. Then the police officer shined a flashlight in his car and knocked on the window until he woke up. Under these circumstances, appellant contends that a reasonable man would believe he was in custody, and thus that his subsequent confessions should have been suppressed.

The trial court did not err in admitting the incriminating statements. In *Cook v. State*, 37 Ark. App. 27, 823 S.W.2d 916 (1992), we held that *Miranda* warnings were not required during a police officer's investigation of an accident. In that case, the officer smelled alcohol on appellant and knew he was going to arrest him, and asked appellant if he had been driving. Appellant's affirmative response was held admissible because at the time appellant had insufficient reason to believe he was in custody.

■ ■ *Miranda* warnings are not required if the police questioning is simply investigatory. *Cook v. State, supra.* In the present case, the officer had not yet decided to arrest Mr. Bohanan when asking about his identification and whether he had been drinking. These were investigatory questions which might have, and did, lead to an arrest. But when the questions were asked he was not "in custody," and would not have reasonably thought that he was under arrest. This was a traffic investigation, for which *Miranda* warnings are not initially necessary. Mr. Bohanan attempts to distinguish this case because the officer blocked him in when he parked behind him. However, he was blocked in only because he decided to park in front of a locked gate, and he would have been allowed to leave but for the eventual determination that he was intoxicated. The trial court's decision to admit the statements was not erroneous.

Mr. Bohanan next argues that the trial court erred in not suppressing evidence collected by the police because the police lacked reasonable suspicion to justify a stop of his vehicle. The

evidence showed that, on the night at issue, a couple stopped into a gas station and told Officer Spearman that a reckless/drunk driver, driving a light blue car, was in a ditch a few miles away on Highway 252. The couple asked if the man needed a ride, but he refused, and the couple told the officer that they "didn't know what was wrong with him." No license plate number was given, and the tipsters were unknown to the officer. Mr. Bohanan submits that the tip given by the informants was insufficient to give the officer the right to order him out of his car when they found it in the driveway.

██ ██ Mr. Bohanan cites *Frette v. City of Springdale*, 331 Ark. 103, 959 S.W.2d 734 (1998), where the supreme court stated that the justification for a stop depends on whether, under the totality of the circumstances, the police have specific, particularized and articulable reasons indicating the person or vehicle may be involved in criminal activity. Arkansas Rule of Criminal Procedure 3.1 provides that an officer may stop and detain any person who he reasonably suspects is committing, has committed, or is about to commit a misdemeanor involving forcible injury to persons or damage to property. When reasonable suspicion is based solely on a citizen-informant's report, the three factors in determining reliability are:

1. Whether the informant was exposed to possible criminal or civil prosecution if the report is false.
2. Whether the report is based on personal observations of the informant.
3. Whether the officer's personal observations corroborated the informant's observations.

*Frette v. City of Springdale, supra.* Mr. Bohanan argues that the first prong of the above test was not met because the informants did not give their names, and that the third prong was not met because the blue car was found in a driveway and not a ditch.

 The officer in the instant case had reasonable suspicion to order appellant out of his car. The mere approach of a police officer to a car parked in a public place does not constitute a seizure. *Hammons v. State*, 327 Ark. 520, 940 S.W.2d 424 (1997). The police officer had as much right to be on the driveway as Mr. Bohanan, and when the officer shined his flashlight he found empty beer cans, a man sleeping with a coat over him, and keys in the ignition. All of these things were in plain view and, combined with

the tip, gave the officer reasonable suspicion that appellant was driving while intoxicated, which clearly falls under Rule 3.1 because it is a misdemeanor involving danger of injury to persons or damage to property. *See Frette v. City of Springdale, supra.*

In *Frette, supra,* the supreme court stated:

> Before turning to the analysis in the present case, we would be remiss in not first emphasizing the significant policy considerations present where a tip reports a driver who is drinking. This court has previously recognized the magnitude of the State's interest in eliminating drunk driving in comparison to relatively minimal intrusions on motorists. In balancing the rights of a motorist to be free from unreasonable intrusions and the State's interest in protecting the public from unreasonable danger, one court has stated that "[a] motor vehicle in the hands of a drunken driver is an instrument of death. It is deadly, it threatens the safety of the public, and that threat must be eliminated as quickly as possible.... The 'totality' of circumstances tips the balance in favor of public safety and lessens the ... requirements of reliability and corroboration."

*Id.* at 120–21, 959 S.W.2d at 743 (quoting *State v. Tucker,* 878 P.2d 855 (Kan. Ct. App. 1994)). In this DWI case the informants' information was relatively accurate: the police did find a blue car on the stretch of highway indicated by the informants, and came into contact with virtually no other cars. The car was not in a ditch, but was on the side of the road with a man passed out in the front seat. Based on the policy considerations set forth in *Frette,* and the specific circumstances of this case, the trial judge's decision to deny the motion to suppress was not clearly against the preponderance of the evidence.

The appellant's remaining argument is that the trial court erred in allowing Officer Spearman to testify, on rebuttal, that he received the tip about a blue car driving erratically. At a pretrial suppression hearing, appellant moved to suppress this statement, and specifically asked the court whether the testimony of his girlfriend (*i.e.,* that she was driving) would "open the door" to Officer Spearman's testimony. The trial judge answered "no" and said that the officer's testimony was not admissible. But the judge further announced that he was going to read some more cases on the issue. At trial, after appellant's girlfriend's testimony, the court allowed the officer's testimony over objection. Appellant asserts that this was error, as he made it clear to the court at the suppression hearing

that he would not put the girlfriend on the stand if it would open the door to the anonymous-tip testimony.

We think the trial court should have excluded the testimony. The court gave appellant the indication that it would not let the testimony in, and had appellant known it would "open the door," he presumably would not have called his girlfriend to testify. Furthermore, the officer did not relate the part of the tip that referenced a man as a driver, which would have rebutted the testimony that appellant was not driving; rather, he only gave information that a blue car was driving erratically, and this hearsay testimony was inadmissible.

Even though the trial court should have excluded the testimony, no reversible error occurred. When evidence of guilt is overwhelming and the error is slight, the error can be declared harmless and the case affirmed. *Greene v. State*, 317 Ark. 350, 878 S.W.2d 384 (1994). In the instant case, evidence that a blue car was driving recklessly was not needed by the State and added little to its case. There was overwhelming evidence of guilt in that appellant was lying in the front seat with keys in the ignition, smelled of alcohol, slurred his speech, staggered, refused the breath test, and refused sobriety tests so as not to "make a fool of himself." Thus, the error was harmless.

Affirmed.

BIRD and ROAF, JJ., agree.

PITTMAN, J., concurs.

HART and NEAL, JJ., dissent.

OLLY NEAL, Judge, dissenting. I cannot agree that the trial court's cautionary instruction that Chief Spearman's testimony could not be considered for the truth of the matter asserted made harmless the prejudice that occurred to appellant and would reverse and remand this case for a new trial.

Trial courts have discretion to decide the propriety of evidence offered in rebuttal. *Isbell v. State*, 326 Ark. 17, 931 S.W.2d 74 (1996); *Schalski v. State*, 322 Ark. 63, 907 S.W.2d 693 (1995). Genuine rebuttal, however, is evidence offered in reply to new matters. *Schalski, supra.* Rebuttal evidence must be responsive to

evidence which was presented by the defense. *Pyle v. State*, 314 Ark. 165, 862 S.W.2d 823 (1993).

In this case, the only witness called by the defense, Karen Whitted, testified that she drove the car in which appellant was found to the driveway where Deputy Cox discovered appellant sleeping. The State's claim that Chief Spearman's testimony that someone advised him that there was a blue four-door passenger car driving erratically on Highway 252 rebuts Ms. Whitted's testimony is completely unavailing. As the majority notes, the officer failed to relate the part of the tip that referenced a male driver, which would have been responsive to Ms. Whitted's testimony.

Moreover, there is no question that Chief Spearman's testimony was prejudicial. Absent Chief Spearman's "rebuttal" testimony the jury was left simply to believe or disbelieve Ms. Whitted's testimony that she had driven appellant to the location where Deputy Cox discovered him. Chief Spearman's testimony that someone told him that a blue car was driving erratically on Highway 252 unquestionably implied that someone was driving a car similar to the one in which appellant was found in an erratic manner and that person was probably under the influence.

The majority concedes that Chief Spearman's testimony was inadmissible. The majority, however, determines that no reversible error occurred because the court gave a cautionary instruction admonishing the jury not to consider the testimony for the truth of the matter asserted. I disagree.

The prosecutor's sole reason for calling Chief Spearman was to get testimony before the jury that someone was driving a blue four-door passenger car along Highway 252 in an erratic manner and presumably that person was under the influence of alcohol. The prosecutor almost admitted as much when he said, "What I am afraid of, Judge, is that if we exclude all of that, you are basically going to have or all of a sudden the officers going to the scene and finding this vehicle and the jury isn't going to get to hear the whole story about why they actually responded to that area and approached that particular vehicle, and that would be because they saw a blue passenger car driving in that manner. That is my concern." In fact, during the hearing on appellant's motion in limine to prevent the introduction of the testimony, the trial court surmised that the only purpose for the testimony was for the truth

of matter asserted. In such a situation where the prosecutor admits his need for such testimony and the trial court immediately recognizes its prejudicial effect and its purpose, I do not think a cautionary instruction alleviates that prejudice.

HART, J., joins.