

# ARKANSAS COURT OF APPEALS

DIVISION II
No. CR–16–722

CODY ALAN BOOSE

APPELLANT

V.

STATE OF ARKANSAS

APPELLEE

Opinion Delivered: May 10, 2017

APPEAL FROM THE FAULKNER COUNTY CIRCUIT COURT
[NO. 23CR-15-251]

HONORABLE CHARLES E. CLAWSON, JR., JUDGE

AFFIRMED

## KENNETH S. HIXSON, Judge

Appellant Cody Alan Boose appeals after he was convicted by a Faulkner County jury of battery in the first degree (law enforcement officer) and of a firearm enhancement. He was sentenced to serve a total of 540 months in the Arkansas Department of Correction. On appeal, appellant contends that (1) the jury instructions violated his due-process rights and (2) the trial court erred in not granting his *Batson* challenge. We affirm.

Because appellant does not challenge the sufficiency of the evidence against him, only a brief recitation of the facts is necessary. *Arnold v. State*, 2012 Ark. 400. Appellant was charged by felony information with first-degree battery (law enforcement officer) and with a firearm enhancement.[1] The evidence presented at trial indicated that the Faulkner County Sheriff's Office executed a "no knock" warrant at appellant's home in Conway,

---

[1]Appellant was also charged with possession of a firearm by certain persons. However, the State subsequently nolle prossed this charge.

SLIP OPINION

Arkansas. After the home was breached during the execution of the warrant and after an announcement was made that it was the Sheriff's department, appellant shot Deputy Eugene Watlington in the side. The jury convicted appellant of first-degree battery, specifically finding beyond a reasonable doubt that the victim was a law enforcement officer acting in the line of duty and that appellant employed a firearm as a means of committing battery in the first degree. The jury recommended a sentence of 30 years' imprisonment for battery in the first degree and 15 years' imprisonment for employing a firearm, for which the trial court imposed a total of 45 years' imprisonment. This appeal followed.

## I. *Jury Instructions*

A circuit court's decision whether to give an instruction will not be reversed unless the court abused its discretion. *Vidos v. State*, 367 Ark. 296, 239 S.W.3d 467 (2006). A party is entitled to a jury instruction when it is a correct statement of the law and when there is some basis in the evidence to support giving the instruction. *Id.* Nonmodel jury instructions should be given only when the trial court finds that the model instructions do not accurately state the law or do not contain a necessary instruction. *Bond v. State*, 374 Ark. 332, 288 S.W.3d 206 (2008). Finally, a trial court's refusal to give an instruction is not reversible error unless its omission infects the entire trial such that the conviction violates due process. *Hickman v. State*, 372 Ark. 438, 277 S.W.3d 217 (2008); *Branstetter v. State*, 346 Ark. 62, 57 S.W.3d 105 (2001).

Cite as 2017 Ark. App. 302

Here, appellant was found guilty of committing first-degree battery against a law enforcement officer in violation of Arkansas Code Annotated section 5-13-201 (Repl. 2013).[2] Section 5-13-201 states,

(a) A person commits battery in the first degree if:

. . . .

(8) *With the purpose of causing physical injury to another person, the person causes physical injury to any person by means of a firearm*;

. . . .

(c)(1) *Except as provided in subdivisions (c)(2) and (3) of this section, battery in the first degree is a Class B felony.*

(2) Battery in the first degree is a Class Y felony under the circumstances described in subdivision (a)(9) of this section.

(3) *Battery in the first degree is a Class Y felony if the injured person is a law enforcement officer acting in the line of duty.*

Ark. Code Ann. § 5-13-201 (emphasis added). For a Class B felony, the maximum sentence is 20 years' imprisonment. Ark. Code Ann. § 5-4-401(a)(3). However, for a Class Y felony, the sentence is 10 to 40 years or life imprisonment. Ark. Code Ann. § 5-4-401(a)(1).

In this case, the jury was read the following relevant jury instructions:[3]

Cody Boose is charged with the offense of Battery in the First Degree. *To sustain this charge the State must prove beyond a reasonable doubt that Cody Boose with the*

---

[2]Appellant does not contest his enhancement for employing a firearm.

[3]On October 19, 2016, this court remanded this case to the trial court to settle the record because hard copies of the jury instructions were not in the record. The trial court responded by affidavit, and the affidavit was supplemented in the record on appeal. In the affidavit, the trial court explained that the hard copies of the jury instructions were deposited in a recycling receptacle after trial. However, the trial court further explained that the instructions were read verbatim to the jury, and the transcript from those proceedings is contained in our record on appeal.

*purpose of causing physical injury to another person caused physical injury to Eugene Watlington by means of a firearm.*

. . . .

The State has alleged that Cody Boose employed a firearm as a means of committing Battery in the First Degree. To sustain this allegation the State must prove beyond a reasonable doubt that Cody Boose employed a firearm as a means of committing Battery in the First Degree.

If you find Cody Boose guilty of the offense of Battery in the First Degree, you will so indicate on the verdict form to be provided to you.

You will also make a finding about whether Cody Boose employed a firearm as a means of committing the offense.

. . . .

Cody Boose asserts as a defense to the charge of Battery in the First Degree that physical force was necessary to defend himself.

. . . .

In your deliberations the subject of punishment is not to be discussed or considered by you. If you return a verdict of guilty, the matter of punishment will be submitted to you separately.

*If you find Cody Boose guilty of Battery in the First Degree you will so indicate on the verdict form provided you. You will also make a finding about the circumstances of the offense as directed on the form.*

. . . .

And the verdict form is as follows: We, the jury, find Cody Boose guilty of Battery in the First Degree, with a signature line for the foreperson.

Or, We, the jury, find Cody Boose not guilty of Battery in the First Degree, with a signature line for the foreperson.

Beneath that: *If your verdict is guilty you shall complete the following: Do you, the jury, find beyond a reasonable doubt that the victim was a law enforcement officer acting within the line of duty, a place to check yes or no and a signature line for the foreperson.*

And an additional form: If you find Cody Boose guilty of Battery in the First Degree, you shall complete the following: Do you find—do you, the jury, find beyond a reasonable doubt that Cody Boose employed a firearm as a means of committing Battery in the First Degree, again designate yes or no, signature line for the foreperson.

(Emphasis added.)

Prior to the trial court's reading of the above jury instructions, appellant objected in part to the model instructions and proffered the following instruction for the purpose of interjecting a question of mental culpability into the offense of committing a battery on a law enforcement officer:

Cody Boose is charged with the offense of Battery in the First Degree. To sustain this charge, the State must prove beyond a reasonable doubt that:

Cody Boose, with the purpose of causing physical injury to another person, caused physical injury to a person he *knew or had reason to know* was a law enforcement officer by means of a firearm.

(Emphasis added.)

The transcript from the trial reveals that appellant made the following specific objections to the jury instructions:

[APPELLANT]:      The State, I submit, has to prove that if he was convicted of battery in the first degree that he knew he was shooting at a law enforcement officer. As a matter of due process they have to prove he knew. It's not strict liability. It cannot be strict liability.

                 For a 15 year enhancer it violates due process to just say -- or for a Class Y felony to say it's a law enforcement officer without an element of proof of knowledge. So it should say that he knew or reasonably should have known it was a law enforcement officer. . . . I'll give you authority. It's LaFave & Scotts -- I've got it -- I'll put it in the record if you need me to. I've got it printed out. Substantive Criminal Law, Section 5.5, and I believe it's Subsection C, that to make something

5

essentially strict liability when it's a serious crime –– and essentially it says a serious crime is anything a felony or above.

And used by analogy, if you want, the Arkansas Supreme Court's statement that sex with a person under 14 is strict liability. That's a due process issue. It's never been raised in Arkansas. And there's plenty of caselaw –– and the footnote that cites it goes on for about four pages –– that it is a due process issue to convict somebody of a serious crime without some proof of knowledge. It eliminates criminal intent.

THE COURT:            What you're saying is it says: "Do you, the jury, find beyond a reasonable doubt the victim was a law enforcement officer acting in the line of duty," does not go all the way. It needs to say, "and that the defendant knew that at the time."

[APPELLANT]:         I would say for the State's benefit knew or reasonably should have known at the time. That avoids a due process issue.

. . . .

THE COURT:            Well, gentlemen, I have some sympathy with your argument, [appellant], but I'm going to give the instruction as provided in the standard instructions, AMCI[.]

Thus, the trial court refused to give appellant's nonmodel jury instruction.

On appeal, appellant argues two due-process challenges to the jury instructions read to the jury regarding the count for battery in the first degree. He first argues that the jury instructions as they were read violated his right to due process under *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Second, he argues that the jury instructions incorrectly made the offense a matter of strict liability. We disagree.

A. *Apprendi*

Appellant first explains that *Apprendi* requires that any fact that raises the punishment for the crime must be proved to the jury beyond a reasonable doubt. Appellant alleges that the jury was read a model jury instruction that stated, "Cody Boose is charged with the

6

offense of Battery in the First Degree. To sustain this charge, the State must prove beyond a reasonable doubt that Cody Boose, with the purpose of causing physical injury to another person, caused physical injury to Eugene Watlington by means of a firearm." He argues that the model jury instruction read does not, however, "say a word about proving that the victim was a law enforcement officer." Therefore, appellant claims that the jury was never specifically instructed that the State was required to prove beyond a reasonable doubt that the victim of his battery was in fact a law enforcement officer, which would enhance his penalty from a Class B felony to a Class Y felony. Thus, he argues that the model jury instruction was not a correct statement of law under *Apprendi* and that his first-degree battery conviction must be reversed and remanded for a new trial. We disagree.

Appellant quotes only a small portion of the jury instructions read to the jury as support for his contention and ignores the remainder of the instructions read to the jury. In addition to the portion of the jury instructions quoted above and found in his brief, the jury was specifically instructed that it was required to make a finding about the circumstances of the offense as directed on the verdict form if it found appellant guilty of battery in the first degree. The trial court then read the verdict form verbatim to the jury, specifically instructing the jury that it was required to indicate whether they found "beyond a reasonable doubt that the victim was a law enforcement officer acting within the line of duty." Thus, after reviewing the jury instructions in their entirety, we affirm on this issue because appellant has failed to show that the jury instruction violated the principle established in *Apprendi*.

SLIP OPINION

### B.  Strict Liability

In appellant's second argument on appeal regarding the jury instructions, he argues that the failure to include in the jury instructions that defendant knew or reasonably should have known that he was shooting at a law enforcement officer creates a strict-liability offense for a Class Y felony without due process in violation of the Fifth and Fourteenth Amendments.  Statutes are presumed constitutional, and the burden of proving otherwise is on the challenger of the statute.  *Gaines v. State*, 354 Ark. 89, 118 S.W.3d 102 (2003).  If it is possible to construe a statute as constitutional, we must do so.  *Id.*  In construing a statute, we will presume that the General Assembly, in enacting it, possessed the full knowledge of the constitutional scope of its powers, full knowledge of prior legislation on the same subject, and full knowledge of judicial decisions under preexisting law.  *Id.*  We also give effect to the legislature's intent, making use of common sense and giving words their usual and ordinary meaning.  *Id.*

Under Arkansas Code Annotated section 5-13-201, appellant was required to have the requisite level of intent in committing battery in the first degree under subsection (a), which the jury found here in convicting him.  Subsection (c) designates the appropriate felony class for committing battery in the first degree depending on the circumstances of the victim.  In this case, the jury specifically found beyond a reasonable doubt that appellant, with the purpose of causing physical injury to another person, caused physical injury to Deputy Watlington by means of a firearm.  Further, the jury found beyond a reasonable doubt that the victim was a law enforcement officer acting within the line of duty.  Therefore, pursuant to the jury's findings, appellant was guilty of a Class Y felony pursuant

to section 5-13-201(c).  The plain language of the statute does not require the State to additionally prove that an offender knew or should have known that his or her victim was a law enforcement officer acting in the line of duty as appellant contends.  Therefore, the trial court did not abuse its discretion in refusing to give a proffered jury instruction that was not an accurate statement of law.

While appellant argues that the trial court's refusal to include his proffered jury instruction was a violation of his due-process rights and cites several federal cases that generally discuss the concept of scienter, or intent, he fails to articulate how these cases specifically support his claim on appeal.  We note that appellant introduced an exhibit at trial containing an excerpt from a legal treatise as support for his proffered jury instruction.  However, even in that excerpt, Professor LaFave states that "the United States Supreme Court has recognized that as a general matter it is constitutionally permissible to enact strict-liability criminal statutes."  Wayne R. LaFave, *Substantive Criminal Law* § 5.5(b) (2d ed. 2003).

On the other hand, the State cites *United States v. Feola*, 420 U.S. 671 (1975).  There, Feola was convicted under 18 U.S.C. § 111 for assaulting federal officers in the performance of their official duties.  The federal officers in that case were undercover narcotics agents.  In finding that an assailant need not be aware that his victim is a federal officer, the United States Supreme Court stated the following:

> We conclude, from all this, that in order to effectuate the congressional purpose of according maximum protection to federal officers by making prosecution for assaults upon them cognizable in the federal courts, [18 U.S.C. §] 111 cannot be construed as embodying an unexpressed requirement that an assailant be aware that his victim is a federal officer.  All the statute requires is an intent to assault, not an intent to assault a federal officer.  A contrary conclusion would give insufficient

protection to the agent enforcing an unpopular law, and none to the agent acting under cover.

> This interpretation poses no risk of unfairness to defendants. It is no snare for the unsuspecting. Although the perpetrator of a narcotics 'rip-off,' such as the one involved here, may be surprised to find that his intended victim is a federal officer in civilian apparel, he nonetheless knows from the very outset that his planned course of conduct is wrongful. The situation is not one where legitimate conduct becomes unlawful solely because of the identity of the individual or agency affected. In a case of this kind the offender takes his victim as he finds him. The concept of criminal intent does not extend so far as to require that the actor understand not only the nature of his act but also its consequence for the choice of a judicial forum.

*Feola*, 420 U.S. at 684–85.

Appellant contends that finding him guilty of a Class Y felony pursuant to the statute without the jury finding yet another level of intent "literally shocks the conscience." We disagree. Appellant's contentions are unsupported by any citation to authority applicable to the facts of this case that would require us to reverse his conviction, and further, we hold that the rationale in *Feola* is persuasive. Thus, we affirm.

## II. *Batson Challenge*

Appellant's final argument on appeal is that the trial court erred in not granting his *Batson* challenge to the State striking S.W., an African-American juror. Under *Batson v. Kentucky*, 476 U.S. 79 (1986), a prosecutor in a criminal case may not use peremptory strikes to exclude jurors solely on the basis of race. *Blair v. State*, 2014 Ark. App. 623, 447 S.W.3d 608. At trial, a three-step process is required to effectuate the dictates of *Batson* and its progeny. *McMiller v. State*, 2014 Ark. 416, 444 S.W.3d 363. First, the opponent of the peremptory strikes must present facts to make a prima facie case of purposeful discrimination. *Id.* Second, upon a showing of a prima facie case of systematic discrimination, the State is required to give a race-neutral explanation for the strikes. *Id.* Third, the trial court must

decide whether the opponent of the strike has proved purposeful discrimination. *Id*. On appeal, we will not reverse a trial court's findings on a *Batson* objection unless the decision is clearly against the preponderance of the evidence. *Id*. Finally, some deference is accorded the trial court in making this decision because it has the opportunity to observe the parties and determine their credibility. *Id*.

During jury selection, appellant made the following *Batson* challenge after the State exercised one of its preemptory strikes:

| [APPELLANT]: | I'm making a *Batson* objection. She's the only African-American out of the first eighteen. |
| THE COURT: | [State]? |
| [STATE]: | I don't think he has a *Batson* objection. He hasn't met his prima facie burden because we've also struck [B.S.] who is a white male. |
| [APPELLANT]: | I don't -- I think the law in *Batson* is changing. I don't think you have to necessarily make a prima facie case. They have to state a reason why they're striking her, not just say, "We're striking her." |
| [STATE]: | And, regardless, just for the record, she said that's a counselor and her position on City Council she deals with law enforcement officer that are doing things inappropriately and appropriately and we -- and she also -- what was the -- yeah, so I think those are reasonable and excuse her regardless. |
| [APPELLANT]: | Well, I don't think it's -- under *Batson*, it's probably good enough, but I don't think *Batson* is necessarily any more good law. I think the law is changing towards the defense. |
| THE COURT: | At this point, I'm going to -- I think it's good under *Batson*, their explanation, so I'm going to overrule your objection. |

Appellant changes his argument on appeal. Instead of arguing that *Batson* is no longer good law, without any citation of authority for this proposition, as he did at trial, he now

argues on appeal that the State's race-neutral explanation was insufficient because the State did not seek to strike two other similarly situated jurors. However, *Batson* arguments not made to the trial court are not preserved for our review on appeal. *Owens v. State*, 363 Ark. 413, 214 S.W.3d 849 (2005). Furthermore, appellant conceded at trial that the State's explanation for striking Juror S.W. was "probably good enough" under *Batson*. Thus, we must affirm the trial court's ruling and appellant's conviction.

Affirmed.

ABRAMSON and MURPHY, JJ., agree.

*John Wesley Hall* and *Sarah M. Pourhosseini*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Amanda Jegley*, Ass't Att'y Gen., for appellee.